17-1534, Jamestown Real Estate LLC as sold versus a field indebted to the State of Colorado. For the other attorneys here earlier, do you know? No. All right, here we are. All right, we did call the case. I'd ask the attorneys that are going to argue, please step up to the podium and identify yourselves for the record. Good morning. Good morning, Your Honor. Richard Craig for the Defendant Appellant Appeal Amendments. Good morning, Your Honor. Michael Jacobson, J-A-C-O-B-S-O-N, on behalf of the appellee, Jamestown Real Estate. All right, so each of you will have about 15, 20 minutes to present an argument from that once we have saved some time up for rebuttal. I'll take five minutes if that would be support. Sure. All right. Do you want me on this side or does it matter? Well, that's normally the, but it really doesn't matter, so. Well, it's set up, so I don't mind staying. Yeah, it's fine. We can figure it out. That shouldn't confuse us too bad. Mr. Craig, why don't you proceed? Thank you. May it please the Court, Counsel. My name is Richard Craig, as I just mentioned, and I represent the Appellant Aqeel Ahmed. This appeal arises out of one count of a five-count complaint brought by Plaintiffs Jameston Real Estate and Art Colasso against Defendants Aqeel Ahmed and Euro Collision at a trial that went forward in May 2017. Mr. Craig, may I ask you about that first issue that there wasn't sufficient proof of the quantum Merowit amount? Didn't the other broker take that same amount, 50 grand? Correct. It was a direct question in that regard. And the question was, if there had been a broker for the buyer, would $50,000 have been the top value of the broker commission? And he agreed with that. And didn't Judge Brennan find in her opinion that that was what the going rate was based on the other broker taking that amount? I believe that was the basis of the finding. Why couldn't she rely on that amount? Because there was no broker for the buyer. And the burden on Jameston Real Estate in order to recover under quantum Merowit would need to show five things. First, that it performed services for the defendant. And that's a crucial point. I'm sorry to interrupt you, but wasn't Mr. Collazo the one who set up the deal originally? How is that not a service? Mr. Collazo is not an appellant here. He's not required to disappeal. I understand. Mr. Collazo approached Mr. Ahmed in October 2012 with a business proposal. And that business proposal was initiated by the showing a proposal of a confidentiality agreement between three parties. Mr. Collazo, Mr. Ahmed, and Mr. Collazo's company, WGCLLC. Jameson was not a part of that agreement. There was no provision in that agreement for brokerage services rendered by Jameson. Had the business transaction gone to its fruition, Jameson would have had no claim to any brokerage fee from that agreement. So, you are correct. Mr. Collazo approached Mr. Ahmed with a business transaction which Mr. Ahmed expressed interest in and underwent the appropriate due diligence as is attendant to all such transactions. And ultimately concluded that the business transaction that Mr. Collazo had brought to the table was not one in which he could participate in because it would not be profitable. But it became profitable when that business went bankrupt and he could buy the business in the land. Right. So, Mr. Collazo gets no benefit from, and his company, Jameson, gets no benefit from the introduction of the deal because it wasn't good enough for him until it's sweeping the pot later? Well, Jameson was not even a part of that at any point. Wasn't there a conversation specifically between Mr. Collazo and your client in which Ahmed agreed to, he wanted to give him money on the side without any written agreement? There was a discussion of a financing. And did Ahmed agree there was a discussion? I forget exactly how he responded to the question at trial. At some point, didn't Mr. Collazo say, no, this has to go to Jameson? I'm not going to be taking the fee myself. Didn't he say that? Something along those lines. He mentioned the record, isn't it? Correct. How do we say that that's against the manifest way for the judge to find that Jameson is entitled to this commission? Because the court also found that there was no contract between Jameson and Ahmed. That was a... The court found there was a quantum merit claim that lied. Correct. How do we say that that finding is against the manifest way? Don't you suggest there's some other standard of review, like de novo? No. Okay, so how is it the manifest way? How do we say the court, the findings were against the manifest way? Because the five elements for quantum merit were not established. What five are you saying? Or just one or two? Why don't you focus on where you really say the problem lies? Okay, the principal problems are the first and the fifth element. The first element is that in order to recover in quantum merit, the Jameson has the burden of proving that it provided services to the defendant. This is a real estate transaction, and Jameson is seeking recovery for quantum merit as a real estate broker. The entities, any entities that would have received services from Jameson as a real estate broker, in any case, would be the seller or the buyer. And neither the seller or the buyer were named as defendants. I don't know why they were not named as defendants, but they were not. Terrico was the seller, and in fact Terrico was the one that hired Mr. Colasso to sell this property. Quantum merit may have lied as a cause of action that Jameson could have stated and proven against Terrico. To a lesser extent... Well, the name plate is Jameson and Art Colasso, isn't it? Correct. But the name defendant is neither Terrico nor SS-2130-LLC, the buyer's name. So now it's a failure of naming Terrico.  And that's an element. What I'm saying is that in order to recover for quantum merit, element number one is the burden of proof on Jameson's part is that it provided a service to the defendant. So are you saying there was no service or that Art wasn't acting on behalf of Jameson? I'm saying that there was no service to the defendant on it. Absolutely for certain, no service to the defendant on it. None by Jameson? Correct. Agent Colasso? Correct. Jameson's services, to the extent that Jameson was even involved in this, performed services for either the buyer or more likely the seller. And those two entities would be the entities against whom a theory of recovery for quantum merit would lie. Those are the two entities and the only two entities in a real estate brokerage situation that can be the defendants in a quantum merit action. Because those are the only two entities that can receive the service provided. So Justice McBride, when you said concentrate on the five elements that are most problematic, certainly the first one. But also the fifth one, and that is the reasonable value for the work performed. Now up until February 6th, or up until February 5th I guess I should say, Art Colasso was not acting in the capacity as a broker. From the moment that he met Mr. Ahmed in October 2012 through February 5th, 2013, they were business partners. And on February 6th, Mr. Colasso, for personal reasons, decided that this was not a business venture that he wanted to undertake. At that, on February 6th, he proposed that Jameson act as the real estate broker for this transaction. And there was a disputed trial whether Mr. Ahmed agreed to that or disagreed to that. So the court decides that dispute, doesn't it? It does, and it did. So how do we say that's against the manifest way? Well, I agree with the court in that one. The court ruled in my client's favor on that. The court ruled that there was no agreement between Mr. Ahmed and Jameson. Jameson? Yeah, Ahmed won that count. Okay. So, in effect, that's the fourth element of the quantum merit, that there is no contract between Jameson and Mr. Ahmed. Because if there was, then you just look at the terms of the contract. Quantum merit recovery occurs when there is no contract, but an entity performs services for that defendant. It's a theory in equity so that somebody doesn't get free services. But it wasn't Ahmed that got the services from Jameson. It was Terrell that got them. Or maybe to a lesser extent, SS2. Didn't the court implicitly find that Ahmed did get services? Isn't that part of the finding here? Isn't he the sole owner of the LLC? He is. But that does not make him liable for the debts of the LLC. But you're also saying he didn't benefit at all. Isn't that what you just said a few minutes ago? That's correct. You're saying he didn't benefit. Correct. The entity that benefited principally was Terrell, but if there were any other entities... Why doesn't he benefit if he doesn't have to pay a broker's fee at all to the guy that set him up with the whole deal in the first place? Buyers rarely pay broker's fees. Broker's fees are, by and large, paid by the seller. And, in fact, we introduced at evidence in trial that every transaction that Mr. Ahmed had undertaken with Jameson as a real estate broker, these commissions were paid in their entirety by the seller, that they were taken out of the seller's commissions. And that's actually the way it is ordinarily handled. In fact, the seller pays the entirety of the broker's commissions. Are you familiar with the case of Halpin versus Teichman Commercial? Correct. I am. Well, what happened there? If I can just consult my notes really quickly, because there's four cases that were cited, and I just don't want to miss a beat. Well, really what it says is that when a broker provides real estate brokerage services to a purchaser, the broker should not be deprived of a commission merely because the purchaser completed the sale without the broker's direct involvement. When the broker introduced the parties of the sale and the purchaser, admittedly would not have known about the existence of the property without the broker's efforts. Okay. And the purchaser was... of his efforts by the broker. It must show abandonment by the purchaser of all intention to buy the property. Correct. Fair enough. And the purchaser here was SS2130, LLC. Amit's company. Amit's company. Right. But it's a person that owns an LLC is not responsible for the debts of the LLC, not without piercing the corporate veil or the equivalent or piercing the limited liability veil. So the purchaser in that regard would be SS2130, who was not named and whose existence was not a secret. We, at the end of the plaintiff... Do you have any case that would support that theory that when you don't bring in the LLC, there's no claim? Do you have any case that ever says that? I am aware of no case, Your Honor. I think this is kind of a roundabout way of answering it. I am aware of no case where a non-party to a real estate transaction was looked to to pay brokerage fees on behalf of a seller or buyer. I consider, you know, there are many cases where there are LLCs and the people who run the LLCs are the property partners. The fact that the LLC was omitted, I know of no case that would say that that would be an indispensable ingredient. I know of no case. Well, the Limited Liability Company Act provides immunity for the debts of the company unless you're in violation of the act that allows for the creation of an LLC. So similar to the corporate veil, if you're not meeting the corporate formalities, then you can pierce it and go after the individuals, perhaps, and something like that. Then the debt would be the LLC. And the fact that Mr. Ahmed owned the LLC would not create upon him the personal debt if there was, in fact, a debt for the LLC. Do you think that you effectively argued this in your brief? I hope I did. Well, I don't know. You say the issues presented are that whether the court erred in entering favor of the plaintiff and against Defendant Ahmed on the quantum meruit when there was no evidence of the value of the services. Okay. That's fair. Your second issue is whether the court erred on the quantum meruit when the known beneficiary was non-party territorial, which you just said. Okay. Nothing about this other argument you're making. And then finally, you say that the court erred when it awarded a brokerage fee when the evidence established that the broker acted in bad faith. I would direct the court's attention to my principal brief beginning at page 20, which would be argument 2B, and that argument. Yes, it does say, to the extent that any entity other than the seller realized any benefit, it was buyer SS2130. Right. So that's what I presented the argument. Right. And you don't cite a single case at all to back up your theory in your argument section of the brief, do you? Cite any authority whatsoever? I provide the Limited Liability Company Act citation. Yeah, okay. But when was this Limited Liability Company formed? I mean, you know, your theory is that you have to bring in the Limited Liability Company, but nobody would know about this until the title was taken. Some people formed their companies just at that moment. But this lawsuit was filed after the sale. I understand. So there was nothing – this was not a secret. There was nothing on day one when they filed their complaint that prevented them from including as a defendant, for purposes of quantum merit, SS2130 LLC. But all of the cases that I have read on the theory that you have presented always showed that the principal always represented that he was acting on behalf of a corporate structure. And I know where in the record here does it show that the defendant was acting on behalf of a corporate structure. I believe the closing documents – No, I understand that the closing documents would show that because the title was taken. Right. But before that, when there was a relationship between Collazo and Ahmed, there's nothing in the record that shows that he said, look, you know, I'm acting on behalf of my LLC. Oh, agreed. Agreed. And while they were – while Mr. Collazo and Mr. Ahmed were potential business partners, there were three entities and SS2130 was not one of them. Well, how about after when Collazo said, you know what, I don't want to do this with you, but I still want to keep working on the deal for you? Correct. Is there any discussion then that did Ahmed say, well, remember, this is about SS2130, not me? Well, the discussion at that point was – Really, the quantum merit is up to the point of the sale. It's not about whether the LLC took title, is it? It is because the first element – and I don't need to keep harping on this, but I can't answer your question without doing it. Sure. The first element is that Jameson must prove that it performed a service to the benefit of the defendant. And so it was on Jameson to prove that it performed a service to a defendant. And who are the entities out there that can be named as defendants that could fill the bill? And there's two of them. There's Terco and there's SS2130. If there is going to be an equitable payment in quantum merit, the first element says that it has to be somebody that the plaintiff proves it performed a service for. And you're basically saying that Mr. Calazo and whatever he did didn't benefit Ahmed in any way, shape, or form. Is that what you're trying to suggest? I don't mean to split hairs here, but Jameson is the appellate. The plaintiff. Right. And there's nothing that Jameson did that benefited Ahmed. I don't think that there's anything that Jameson did that benefited anybody. The entire interaction was between Calazo and Ahmed. Wasn't Art Calazo a named plaintiff as well? He is. And he lost. Okay. Jameson won. Jameson won a single count for quantum merit. Calazo's not in any way related. He's not a parent or actual agent of this Jameson or anything like that, right? To the extent that you could say that he would be the apparent agent of Jameson in a real estate brokerage capacity would be from February 6th to March 5th of 2013. And that's it. Okay. So how much was that worth? They never proved it. Well, why didn't they prove it? Because they offered no testimony, no evidence as to what those five acts which we delineated will be worth. Wasn't the original agreement that it would be worth 5%? And wasn't Mr. Calazo really looking for more like $115,000? To answer your second question, first, yes, that's what he was looking for. The court gave him 50, didn't give him the 5% that he said that was agreed to between him and Ammon. Right. Okay. And again, the court also found that there was no agreement. The court found that an equitable amount to pay Jameson for the work that it performed for Defendant Ammon, really against Defendant Ammon's wishes because the court also found that he rejected the proposed brokerage agreement, was $50,000. And there's nothing to support that number. The amount that Terrico spent on its broker, who was with it from the inception of the deal sometime after March 5th, 2013, through the end of closing, was $50,000. So, you know, one of the things you say in your brief is that the plaintiff, Jameson, recovered under a quantum error, despite that its agent, Calazo, acted in bad faith in two separate ways. Correct. So you acknowledge in your brief that Calazo was the agent of Jameson, and therefore if Calazo was entitled to anything, its principal was entitled to that as well. Isn't that true? Well, what I mean by that argument is that Terrico hired Calazo way back when and instructed Calazo to list the property on the LLC publicly. And he didn't do that. He went rogue. He decided to keep it secret so that there would be no competition because he wanted to buy it himself and he didn't want the price to be driven up. And also, he testified that when you do it that way, the commissions increase in percent. So instead of getting the ordinary 5%, he would get some amount higher than 5%. Like 10%. I don't know exactly what they get when it's offline like that, but he testifies more than 5%. So that is, in my mind, a terrible thing to do. But the other thing that he did was he learned about this transaction or the existence of the contract in spring of 2013. And it took a half a year for this transaction, the new one, to go from the new deal, which was radically different than the one Calazo had brought to the table, to closing. And in no time did he suggest to the parties involved that, hey, I should be paid for my services. And if he had mentioned his idea that he should be paid, the parties could have worked it out. Well, you know what? Parties can always, always work things out at any time. Why don't you sum up? We're talking about a $50,000 amount of money here. Let's hear from the other side and then we're going to give you time to rebuttal. Great. If I could sum up by just finishing that one point I was going to say about this being a radically different transaction. It was more than the fact that just the personal property of the white glove car wash was now thrown into the mix. Now, as owner of the property, Mr. Ahmed no longer needed to depend upon an ailing car wash that was being driven into the ground for rent in order to pay for its mortgage. Instead, the demise provision part of the property was gone and Mr. Ahmed's LLC, SS2130, could run that property, use it as it saw fit, in the most profitable way. A huge difference than taking title to property subject to a lease and depending on an ailing company to pay rent or having difficulty in paying the mortgage to pay it off. So that's what I meant by a radically different deal than what Mr. Collazo brought to the table. All right. We're going to give you some time for rebuttal. Mr. Jacobson, you may proceed. Thank you, Your Honor. Good morning again. Michael Jacobson on behalf of the APOE Jamison Real Estate. I'd first like to address what Mr. Craig was saying about the buyer LLC. And under these circumstances, the fishing of the buyer LLC should be disregarded because Mr. Ahmed is the sole owner of the LLC in the sense that Mr. Ahmed was the only person in the grand scheme of things who could possibly benefit from the services provided by Jamison. And looking back at the transaction itself, how it played out, Mr. Ahmed was acting on behalf of himself individually when he was discussing this matter with Collazo. When Mr. Ahmed provided a letter of intent to purchase the property to Mr. Swanson, that was in his individual capacity. When Mr. Ahmed signed a purchase and sale agreement in April 2013, nowhere does it say SS2130 LLC is the beneficiary. It again is signed individually by Mr. Ahmed. So what Mr. Ahmed is telling you now is that I can't be a beneficiary even though I am the sole owner of this entity that purchased the property, and even though I was the one who individually took all the steps that Jamison provided for me to purchase the property. It's to be disregarded under these circumstances. The fact of the matter is Mr. Ahmed didn't even argue these points at the trial. He didn't argue that I didn't benefit, but this LLC that I own was the only one that benefited. Same thing with Terrico. He didn't argue at trial that Terrico benefited, not Mr. Ahmed. I believe those arguments have been waived at this point in the case. Well, is that in your response brief? Yes, it is, Your Honor. We do specifically state that those two arguments have been waived. The only thing that was argued by Ahmed at trial was the appropriate valuation of the services that Jamison provided to Mr. Ahmed. That's the only argument. That's the only argument that they were disputing at trial. There was no proof that this service was valued at about $50,000. There was evidence that it was valued. No, I'm saying that's what he was challenging, though, that the evidence that was presented wasn't sufficient for the court to find the value was $50,000. What was argued at trial by a defendant was that the evidence presented was not equal to the value of $115,000, which is what we argued. What the court found was that based on the evidence in the record from the testimony of Mr. Swanson and from the testimony of the witnesses, that the commensurate value for Byers Brokerage Commission under these circumstances was, in fact, equal to $50,000. There's another point that Defendant Ahmed keeps going back to, and I look at the almost like a line-item basis as to the time period that they believe, they're perceiving that Jamison was acting as a broker or in a brokerage capacity. But there's certainly value in providing Ahmed with the opportunity to purchase the property, and there's value in what is achieved. So specific activities, as well as the opportunity, as well as actually completing a deal to purchase the property, is what makes up the value of those services, and we have evidence at trial already established that. Well, didn't Judge Brennan look at what the other broker received and kind of add that was a certain percentage of the sales price, and so you get the other half? Well, the testimony was at trial was Mr. Swanson, who represented the broker, Terrico, and Mr. Swanson said that when he, that $50,000, that was a standard brokerage price for the seller. And then a testimony elicited by Mr. Craig, he asked Mr. Swanson, is that what the buyer would be paid as well? And Mr. Swanson said, yes, that's what the buyer would be paid under these circumstances. And typically what the evidence showed was that each, when there's two brokers to a transaction, one for a buyer and one for a seller, they're each paid a percentage of the sale price. What Defendant Ahmed argued at trial was that there's a 5% commission that's split between two brokers. So there's typically what their argument was that each broker is paid the exact same. In fact, that's what they argued at their closing argument as well, that now that we're entitled to $115 and that Mr. Swanson's company, Terrico, is entitled to $50, that each broker should be paid the same amount. And that's what the trial court found when it was going through the evidence, that Mr. Swanson's company, Terrico, their brokerage services equate to $50,000, and in the same sense, that's what the buyer's broker would be worth, the value would be worth, under a quantum merit theory. Mr. Ahmed has repeatedly stated that Jamison did provide brokerage services to him. It's not to say that Collazo and Jamison were strangers to this deal at any point in time. After Mr. Collazo presented this brokerage agreement to continue on as Mr. Ahmed's broker, Mr. Ahmed continued going back to Collazo, asking for help, asking him to be involved in the transaction. So it's not to say that Jamison had no role in this whatsoever. The fact of the matter is this whole transaction originated with Jamison. Both parties agreed in their testimony that another broker at Jamison, an individual named Mac Saros, first brought this deal to, or the possibility of this deal to Collazo and Mr. Ahmed's attention, and it was originated through there. At all times, Mr. Ahmed knew that Mr. Collazo was also a vice president of Jamison Real Estate. So it's incorrect to say that Jamison just suddenly appeared out of nowhere at some point in the transaction and expected a brokerage commission. And the agreement itself is evidence that the services performed were not gratuitous in any way. Mr. Collazo, acting through Jamison, expected a commission. Mr. Craig also incorrectly stated some of the testimony regarding when Mr. Collazo first learned of the transaction and when it was consummated. What Mr. Collazo testified at trial was that he heard that the property was under contract in the spring of 2013. What he didn't testify to is that I knew it was Mr. Ahmed who purchased the property or I knew that Mr. Ahmed's company purchased the property. What Mr. Collazo testified at trial was that after the property had been sold and was under contract and the title had passed to Mr. Ahmed's company was when he first learned that the transaction was completed with Mr. Ahmed. So it's incorrect to say that Mr. Collazo just simply sat at his hands and waited from April 2013 through the time the transaction was completed to act on what he believed the commission was owed. Frankly, he didn't know who the buyer was until he had knowledge later in November of 2013 that the buyer was in fact an entity owned by Mr. Ahmed. The last point I would want to make is that Mr. Ahmed is both discarding Mr. Swanson's testimony but he's also relying on it. Mr. Swanson testified that he was a real estate broker who had over 48 years of experience. He had acted as a court-appointed receiver. He certainly had the experience, wherewithal and know-how to testify how much the value of a real estate broker's services are worth in this particular transaction. And he testified to that and that testimony was unrebutted and it was uncontradicted. There was evidence in the record supporting the trial court's award of $50,000 in a quantum merit claim. And we believe that the award of the trial court should be affirmed. Thank you, counsel. Mr. Craig, final word. May it please the Court. A few points that were raised that were inaccurate, principally that this transaction originated at Jameson. That is simply not true. Mr. Collazo testified that he received or earned income in a variety of ways. And many ways that he derived income was by side business ventures. He testified to that at the supplemental record, page 198. And those were transactions where he would acquire a business either by purchasing it or making sure that he controlled it. And those transactions had nothing to do with Jameson. And in this situation, that's how it originated. Not because of anything Jameson did, but because Mr. Collazo identified a business venture that he was interested in. Spent a year and a half trying to get it accomplished. And having failed at getting it accomplished for a year and a half, he sought out the assistance of someone who knew what he was doing. He learned of Mr. Ahmed through a mutual acquaintance that had nothing to do with Jameson. Well, we can tell that everybody was a Sharpie here. Okay? There's no question about it. I'm not familiar with the term Sharpie, so... They knew what they were doing. Okay. Fair enough. They did. And they knew that there were risks inherent to moving forward. Business ventures fail all the time. Business ideas are explored and sometimes abandoned. And that's what happened here. Mr. Collazo identified a business venture that he was interested in and ultimately abandoned it in February of 2013. The suggestion that Mr. Collazo did not wait in the weeds because he did not know who the buyer was. He knew who the seller was. The seller was Terrico. And the seller was the one that hired Mr. Collazo. So, Mr... I don't think... Well, I won't make a comment in that regard. But I will say this. Having been hired by Mr. Swanson to sell this property, Mr. Collazo could have easily ascertained who the buyer was by simply asking his client, Mr. Swanson, who would you sell it to? With regard to the testimony of Mr. Swanson, first of all, it was not disclosed as an opinion witness, independent-independent opinion witness, to testify to the value of the services rendered under Quantum Meroweth. But the question that was posed to Mr. Swanson was, if there had been a buyer's broker, someone who, from the inception of the real deal that occurred when Mr. Swanson called Mr. Ahmed, sometime after March 5th, 2013, through September 30th, 2013, if there had been a buyer's broker that was involved for that seven or eight month period and did all the things the buyer's brokers do, which is a lot. I'm married to one. I know that they don't just find things and get $50,000 for it. If there had been a buyer's broker, then how much would it have been? And it would have been $50,000 tops. But in this case, Jamison was not the buyer's broker. It never acted as the buyer's broker. So Mr. Swanson's testimony was insufficient for Jamison to rely upon for its burden of proof under that fifth element of Quantum Meroweth that says that you have to prove the reasonable value of the work performed. What was the work performed? It was a February 6th solicitation. Hey, hire Jamison, which was judicially determined to be rejected. It was four more text messages over the course of the next five weeks, and it was the proofreading of one letter. Those five things, $50,000. If I could get $10,000 every text message, I'd be sending text messages all day. There's no real-world connection between $50,000 and the work that was performed by Jamison. And again, we're not talking about a breach of contract. We're not talking about I get a percentage if this sells. The breach of contract claim was articulated, and they lost at trial. We are talking about an equitable remedy that addresses not a percentage. Sometimes plaintiff's lawyers get 33% for very little work, but sometimes they get 33% for a lot of work, but that's under contract. This is an equitable recovery where we actually look at the work that was actually performed. And in order to ascertain the value of those five line items, we need somebody that says, I'm in the business, and this is what we get. This is what the work that was performed is worth. And there was none of that. And so they did not prove the fifth element. All right. Thank you both. Thank you. The matter will be taken under advisement, and the court is adjourned.